## D. J. BROWN *v.* THE STATE.

1. MURDER — CHARGE OF THE COURT. — In the trial of a murder case the court instructed the jury that " when the fact of killing has been clearly established, and it has not been shown to be the result of accident, or to have been done under such circumstances as will in law mitigate, excuse, or justify the act, the law in such case implies malice without further proof, and makes such killing murder." *Held,* to be a correct proposition of law, and not amenable to the criticism that it makes malice a presumption of law, instead of an inference of fact; or that it makes the mere fact of the killing, irrespective of other evidence, impose on the defendant the burden of proof; or that it is a charge on the weight of evidence.

2. DRUNKENNESS. — Voluntary intoxication can constitute·no excuse for crime, nor, in cases of culpable homicide, can it reduce to the grade of manslaughter a homicide which if committed by a sober man would be murder. But

when the question is between murder of the first and murder of the second degree, the fact of drunkenness may be proved to show the mental *status* of the accused, and thereby enable the jury to determine whether the killing resulted from a deliberate and premeditated purpose.

Appeal from the District Court of Freestone. Tried below before the Hon. D. M. Prendergast.

The character of this case is clearly indicated, and the substance of the evidence is disclosed, in the opinion of the court. It may be added, however, that two of the State's witnesses, Hamilton and Blackwell, testified positively that Brown, the appellant, fired the shot by which Emma Dailey was killed. Hamilton's evidence, however, disclosed the further fact that he was himself under indictment in Navarro County for the same murder. Emma Dailey lived several days after she was shot, and her declaration was in evidence to the effect that the pistol was fired by either Brown or Hamilton, but she did not know by which.

As will be seen in the opinion, the appellant was found guilty of murder in the second degree, and his punishment assessed at seven years in the penitentiary.

*Theo. G. Jones*, for the appellant. If it is asked, Can it be possible that a person can kill another under circumstances that do not justify, excuse, or extenuate to manslaughter under our Code, and, under no other plea than that of excessive intoxication, escape all punishment, I answer that killing is not a crime, but the mode of killing; that there can be no murder in the absence of malice; and if the facts in any given case rebut all inference of malice from mental incapacity to entertain it, from whatever cause, how can it be murder?

Implied malice, as a presumption of law from the isolated fact of killing, is a speculation of the school-men, an axiom

handed down to us from scholastic jurisprudence, but a speculation that "roams over all creation without possibly touching any real case." Such doctrine can have no real application to any case that can arise in a court for the trial of real causes, and certainly not in this case, upon the supposition even that the defendant is the guilty agent; the evidence here of the intoxication of the defendant, and the circumstances of the accident, tending, to say the least, so strongly to show that this is a case of negligent homicide under our Code, if any offense known to our law. This doctrine of implied malice, from the abstract fact of killing, is a fiction. which has found its way in the opinions delivered by many of the courts of our country, and also in our own, dignified as a "legal presumption," but which, upon a careful examination, will be found, it is conceived, to be without real foundation, and not supported by reason and correct principle. ·It is, indeed, an adulteration of the doctrine of the leading cases of *The Commonwealth* v. *York*, 9 Metc., and *The Commonwealth* v. *Webster*, 5 Cush. In the former the instruction to the jury in this respect was : "The rule of law is, when the fact of killing is proved, and nothing further is shown, the presumption of the law is that it is malicious, and an act of murder." This rule was reaffirmed in the latter case, where the court, after stating the rule, adds : " It is material to the just understanding of this rule that it applies only to cases where the killing is proved, and nothing further is shown." And, again, in *The Commonwealth* v. *Hawkins*, 3 Gray, Shaw, C. J., remarked that " the doctrine of York's case was that where the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious, and an act of murder; and that this was inapplicable to the present case, where the circumstances attending the homicide were fully shown by the evidence." So that this doctrine may answer very well

as a harmless theory, for no such case as the fact of killing "where nothing further is shown" is likely to ever occur in practice. This is conceded by our present chief justice in the case of *McCoy* v. *The State*, 25 Texas, 42, 43. But even as a theory, it has not the support of reason. *Ake* v. *The State*, 30 Texas, 474; *Hamby* v. *The State*, 36 Texas, 528; *Perry* v. *The State*, 44 Texas, 478; Whart. on Hom., 2d ed., secs. 32, 33, 669; *Ibid.* 386; *The Commonwealth* v. *York*, 9 Metc. 93; *The Commonwealth* v. *Webster*, 5 Cush. 305; *The Commonwealth* v. *Hawkins*, 3 Gray, 463; *Hampton* v. *The State*, 45 Ala. 52; *Dukes* v. *The State*, 13 Fla. 499; *Stokes* v. *The People*, 53 N. Y. 164; *Witt* v. *The State*, 6 Cald. 5; *The State* v. *Johnson*, 41 Conn. 588; *The State* v. *McDonald*, 32 Vt. 491, 498, *et seq.*

The common-law rule of evidence in criminal cases, as laid down by Blackstone, Starkie, and other elementary writers — that it is incumbent upon the prisoner to prove all circumstances of mitigation, excuse, and justification — is not, in all cases, the law of this state under our codes, nor of other American states with laws and codes of similar provision in this respect. And those portions of the charge of the court referred to in the specifications of error, while they do not *in totidem verbis* instruct the jury that such burden of proof is on the defendant in this case, yet such is the legitimate effect of the instruction in this respect, first given in one part of the charge and repeated in another; and if not intended by the court to be the holding of the common-law rule, it was calculated to mislead the jury; but if it was intended to be the announcement and application of that rule, as it is to be presumed it was, it is not the law as applicable to this case, when circumstances of mitigation and of accident were even first proved by the State. Whatever announcements of the common-law rule may be found in the decisions of our Supreme Court as authoritative, from the earliest cases down to *Farrer* v. *The State*,

42 Texas, 272 (and I am aware of none later than this), it is believed that the same have been virtually overruled by the cases of *Perry* v. *The State,* and *Black* v. *The State,* and that the doctrine indicated in these cases will, upon more thorough investigation, as occasion may demand, receive a more distinct enunciation, and in accord with modern theories and adjudications.   Code Cr. Proc., art. 640 (Pasc. Dig., 5105) ; *Perry* v. *The State,* 44 Texas, 478 ; *Black* v. *The State,* 1 Texas Ct. App. 389 ; *Long* v. *The State,* 46 Ind. 589 ; *Linn* v. *The State,* 51 Ind. 175 ; *The People* v. *Ah Kong,* 49 Cal. 6 ; *The People* v. *West,* 49 Cal. 610 ; *Reid* v. *The State,* 50 Ga. 556 ; *Peri* v. *The People,* 65 Ill. 17 ; *Wellar* v. *The People,* 30 Mich. 16 ; *The State* v. *Underwood,* 57 Mo. 40.

The submission of the abstract fact of the killing, in the portion of the charge here referred to, is set forth so prominently as sufficient evidence of malice, in the language of the court, "without further proof," and that, too, loaded with the weight of a legal presumption which, it is believed, has been shown is itself not warranted by law, it is submitted that under all the facts in the case, and in the failure of the court to charge the law of reasonable doubt as to the conclusion of malice as indicated by all the facts, except as to express malice, was, notwithstanding the saving portion of the instruction, a charge upon the weight of the evidence, and involving a fundamental error of law, and was "calculated to injure the rights of the defendant;" and having been presented in a motion for a new trial, though not excepted to when given, will be revised.   Pasc. Dig., art. 3137 ; *Bishop* v. *The State,* 43 Texas, 396 ; *Alderson* v. *The State,* 2 Texas Ct. App. 12.   And see, as to charge on weight of evidence, *Merritt* v. *The State,* 2 Texas Ct. App. 177.

Upon reason and principle, the absence in any one of mental capacity, whether from drink or other cause, "to

form [in the language of the court in the portion of the charge referred to] an intelligent design, or understand the character and result of his acts," is the want of ability to commit crime, where intent is an essential element or ingredient.

It should seem, indeed, that to state this proposition is to argue it. But the court below has said in this charge, as applicable to the case at bar, that while one in such a mental condition as here indicated could not kill upon express malice, yet if he should kill when in such mental condition, the killing would be upon implied malice, " in the absence of proof of such circumstances as would mitigate, excuse, or justify the act." Why put in the saving clause, when the jury had already been instructed, in other portions of the charge, that drunkenness was no mitigation of a homicide below that of murder in the second degree; and as to circumstances of excuse and justification, they, of course, would avail every one, whether drunk or sober?

It is true that our courts have not, in any case, held that drunkenness is a mitigation in murder, except in the degrees of murder. But there has been no case that I am aware of that has called for any other ruling. It is also true that it was said in *Farrer* v. *The State*, 42 Texas, 272, " that the mere fact of being drunk will not mitigate the criminality of a voluntary killing below the grade of murder;" but this is only so when the killing is voluntary. And in *Farrell* v. *The State*, 43 Texas, 509, Moore, J., says: " If it is clearly shown that the purpose to take life had its inception, and was carried into effect, while the defendant is in a state of mental confusion, whether from drink or other cause, which renders him incapable of calm reflection, or of forming a deliberate design to take life, the offense committed cannot be murder in the first degree." The mind might be in the condition here described and still capable of premeditation, of voluntary homicide, of understanding the " character and

result" of the act about to be committed, of forming an "intelligent design," as distinguished from a deliberate design. And says the court below, in this case, "if the mind of defendant is not in a condition to form an intelligent design, or understand the character and result of his acts," the killing would be upon implied malice. There is certainly no warrant for such doctrine in the modern theories of criminal law, and there can be no sanction for it in definition and the elementary principles of the common law.

What is malice? It is some positive condition, state, or quality of the mind, and not negative. Can mere vacuity or inanity contain the quality of malice? Lord Hale's definition of malice in fact " is a deliberate intention of doing any bodily harm to another, whereunto he is not authorized." Hale's P. C. 450. The cases in East's Pleas of the Crown, of a person willfully riding an unruly horse among a crowd of persons, and death ensuing from the viciousness of the animal; of the unnatural son who exposed his sick father to the air against his will, by reason whereof he died; of the harlot who laid her child under the leaves in an orchard; where a kite struck and killed it; of the man who had a beast that was used to do mischief, and he purposely turned it loose, though barely to frighten people and to make sport, and it killed a person; of the workman who threw down a stone or piece of timber into the street in a populous town, where people were constantly passing, and killed a person — were all murders, on the ground that the law holds that the parties intended the probable consequences of their acts.

Mr. Justice Bayley, in *Bromage* v. *Prosser*, 4 Barn. & Cress. 255, says: "Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse." Although this may be obnoxious to some criticism, yet it is accepted by jurists of this country as a good definition. Mr. Wharton, in his work on Homicide, in the sections before referred to (secs. 32, 33, 669), enunciates

implied malice upon the theory that as reasonable beings are presumed to understand the probable consequences of their acts, and usually premeditate any important step they take, we have a right to infer that they intended the act and its consequences. The intent with which an act is done is the essence of the crime. *Ferrell* v. *The State*, 43 Texas, 511. Many references might be given, but these are sufficient. And, if I may be permitted, I will only remark further, that if the doctrine of malice implied as a presumption of law from the abstract fact of killing is a speculation that, as Mr. Wharton says, "roams over all creation without possibly touching any real case," I would venture to say that the implied malice enunciated in the formula before us is a speculation that must "roam over all creation," and the "balance of mankind," without finding any case for its application.

In conclusion, it may be remarked that while our chief justice, Roberts, has, in the cases of *Atkinson* v. *The State*, 20 Texas, 522, and *McCoy* v. *The State*, 25 Texas, 33, so ably and thoroughly discussed the question as to the true test and distinction between the two degrees of murder under our statute and Penal Code, and has so forcibly illustrated it, and so clearly pointed out and distinctly marked the proper boundary-line between them, yet the doctrine of implied malice, in its true and proper sense, and correct application to the variety of real cases of homicide in the different degrees, from murder in the second degree down, is a field not so fully explored by the profession and the courts of the American states. It is difficult for the mind to grasp the full ideas conveyed in the expression "implied malice," if not impossible, and so fully comprehend them as to rest with a quiet assurance that it has mastered the thought. Indeed, the connection in which the expression is used in the decisions of many of the courts leads the mind into a wilderness of conjecture, without rest, and, like the wander-

ing mariner upon a shoreless sea, without star, compass, or rudder, drifts hither and thither upon the wave in overwhelming confusion.

*George McCormick*, Assistant Attorney-General, for the State. It is objected that the charge did not correctly define malice as applicable to murder in the second degree.

The law upon this point is now too well settled to admit of argument. A voluntary killing with a deadly weapon will be murder in the second degree unless the accused shall show such a state of facts as will reduce the offense. The killing being shown to be unlawful and voluntary, and with a deadly weapon, the law presumes it done upon malice ; and such crime is murder in the second degree.

Upon this point our statute itself overrules those cases cited by counsel ; it declares " that the intention to commit an offense is presumed, whenever the means used are such as would ordinarily result in the commission of the forbidden act." Pasc. Dig., art. 1654; *Murray* v. *The State*, 1 Texas Ct. App. 421 ; *Farrer* v. *The State*, 42 Texas, 242 ; *Plasters* v. *The State*, 1 Texas Ct. App. 681 ; *The Commonwealth* v. *Drum*, 58 Penn. 9 ; *The State* v. *Harris*, 63 N. C. 1 ; *Kriel* v. *The Commonwealth*, 5 Bush, 362.

The charge states that while the law implies malice, yet it does not imply express malice. This is the correct rule. *Murray* v. *The State*, 1 Texas Ct. App. 421 ; *Farrer* v. *The State*, 42 Texas, 242.

But it is objected — and for the first time in this court, as no such question was raised on the trial or in the motion for new trial — that the witness Hamilton was an accomplice, and the law requiring such testimony to be corroborated was not given the jury.

A charge not having been asked on this point, and no exceptions taken to the failure of the court to give such

charge, the question must be settled by reference to the facts of the case, and it must affirmatively appear that such error was calculated to injure the rights of the accused, or it will not be sufficient reason for granting a new trial. *Bishop* v. *The State*, 43 Texas, 390; *Holden* v. *The State*, 1 Texas Ct. App. 237; *Boyett* v. *The State*, 2 Texas Ct. App. 99.

While, as in *Davis* v. *The State*, 2 Texas Ct. App. 588, it is often necessary that such a charge should be given, yet, as in the case at bar, the evidence against the accused is overwhelming, and it is very doubtful as to the witness being a *particeps criminis;* and such omission cannot be material.

Ector, P. J.   This was an indictment for murder in the first degree, found in the District Court of Navarro County, against the defendant, for the murder of one Emma Dailey, on November 26, 1876, in the city of Corsicana.

Upon the application of defendant, a change of venue was granted to Freestone County.   At the April term, 1878, of the District Court of Freestone County, the case was tried; the jury found the defendant guilty of murder in the second degree, and assessed his punishment at seven years' confinement in the penitentiary.   A judgment was entered in accordance with the finding of the jury; and it is to reverse the judgment that this appeal is presented.

The statement of facts shows that Emma Dailey was shot in the city of Corsicana, in Navarro County, about the time charged in the indictment, between seven and eight o'clock at-night, near the front door of her own house, the ball entering her side and passing through her body.   She lived five or six days after she was shot, and died from the effect of the wound.

Three propositions were insisted upon by the defense in the court below, and are now in this court, to wit: first,

that defendant did not fire the shot which caused the death of Emma Dailey; second, that if defendant did fire the fatal shot, he did not intend to kill the deceased, and the killing was accidental; third, that the defendant was so intoxicated from the use of liquor at the time, he was incapable of committing the crime of murder.

The record shows that the defendant, in company with Ben Hamilton and J. P. Stately, was in the city of Corsicana on November 26, 1876, drinking. Late in the evening they got their horses from the rack where they were hitched, and took them to Collins' livery-stable. Hamilton and Stately engaged in a game of cards, up stairs over the stable, Stately playing, for Brown, against Hamilton. Hamilton and Stately got into a row about the game, and Stately attempted to draw his pistol. Brown took the pistol from him, and kept it. After this, defendant invited the company — the witness Blackwell then being present with them — to go down the street to Fryer's saloon and take a drink. The next building south of Collins' livery-stable is Mollie Tompkins', the next is a vacant house, and the next is the house in which Emma Dailey lived. Fryer's saloon was still further south, on the next block.

The statement of facts directly shows that Mollie Tompkins and Emma Dailey were lewd women, and that defendant knew Emma Dailey and her house. On going down to Fryer's saloon, in passing the house of Emma Dailey, defendant stopped, knocked at the door, and asked to be admitted; and, upon being refused, said he would kick the door down. The four went on to Fryer's saloon. While there, the defendant had a pistol in his hand, and the witness Blackwell testified that defendant there said "he had done everything except steal a wagon and kill a woman, and that he would not be satisfied unless he killed somebody before he went home."

After leaving Fryer's saloon, these parties returned to Col-

lins' livery-stable and stopped in front of the stable, some of them taking seats on a platform north of the stable-door. About this time Emma Dailey came out of the house of Mollie Tompkins, and was going in the direction of her own house, when a pistol was fired by some one of the party at Collins' stable, and Emma Dailey was shot and mortally wounded. She was then about sixteen steps from Collins' stable. The moon was shining; one of the witnesses says it was a bright moonlight night; another, that the moon was shining, but not very brightly. The defendant was, shortly after this, arrested by a city policeman, some forty or fifty steps from where deceased was shot. This policeman testified that defendant, when arrested, was considerably under the influence of liquor, " but not too drunk, in witness' opinion, not to know what he was doing; he would call him about half drunk."

The evidence, we think, is sufficient to show that defendant shot and killed the said Emma Dailey.

Upon the question as to who fired the fatal shot, the jury were properly instructed that this was a question for them to consider, and that if they had a reasonable doubt of the defendant's having done so, they should acquit him, and look no further into the case.

The first error assigned by the defendant is that the court erred in the following portion of the charge, to wit: " When the fact of killing has been clearly established, and it has not been shown to be the result of accident, or to have been done under such circumstances as will, in law, mitigate, excuse, or justify the act, the law, in such case, implies malice without further proof, and makes such killing murder." The defense says that the errors in this instruction are:

" 1. That it makes malice a presumption of law from a given fact — the killing alone — instead of an inference of

fact, which it always and necessarily is, as to its determination in any real case.

" 2. It shifts the burden of proof upon the defendant at a given point — the isolated fact of killing — when, by law, it is never shifted, and when in this case there were various facts and circumstances in evidence in connection with the killing, and some even testified to by the State's witnesses, which tended to refute the presumption or inference against the defendant, and such charge in its application to this case was calculated to mislead the jury, in causing them to find the defendant guilty of murder, without looking further to the proof before them than the fact of the killing, unless it was shown, on the part of the defendant, that the killing was the result of accident, or was done under circumstances that would, in law, mitigate, excuse, or justify the act; and in that such portion of the charge in reference to circumstances of mitigation, when taken in connection with other portions of the charge on this question, restricted the jury to the consideration of excessive drunkenness as a mitigation of murder in the first degree to murder in the second degree only, and to negligent homicide, and in this respect is not the law as applicable to the facts of this case.

" 3. That it is a charge upon the weight of evidence," etc.

The counsel for the defendant has discussed this branch of his case with unusual ability and research. We do not concur with him in believing that there is any error in this portion of the charge of the court. The court, in its instructions to the jury, defined murder in the language of the statute. Pasc. Dig., arts. 2266, 2267. The jury were properly instructed by the court, in case of homicide, under what circumstances the law would mitigate, excuse, or justify the act. It gave them the legal definition of malice, and the distinction between express and implied malice.

A careful examination of the entire charge is necessary to understand how fairly and clearly the jury were instructed upon every legal question that could arise on the facts, so that they were able to find an intelligent verdict.

Our Supreme Court, in the case of *Farrer* v. *The State*, 42 Texas, 265, says: "It is a familiar axiom that every one is presumed to understand the probable result of his act. And when an unlawful act is clearly shown to have been done, it is for the defendant to show facts which mitigate, excuse, or justify it, so that a reasonable doubt, at least, may arise on the entire evidence in the case as to his guilt. Hence, when the killing is proved, and it is not shown to have been done under sudden passion, induced by adequate cause, or under circumstances which excuse or justify it, such killing must be regarded as voluntary and designed, and, therefore, with malice, which the law imputes to such homicide. * * * But while the law implies malice on proof of voluntary homicide, it does not impute express malice. This is an inference, not of law, but a question of fact, consisting of intention dependent upon the state of the mind. And to warrant a conviction of murder in the first degree, it must be proved, like any other fact in the case, by such evidence as is reasonably sufficient to satisfy the jury of its existence. The evidence by which this inward intent is to be shown consists of external circumstances — such as the acts or declarations of the party at or nearly connected with the killing, manifesting the state and condition of the mind, and the nature and extent of its design."

Among the cases cited by the defense is that of *Perry* v. *The State*, 44 Texas, 473. In that case the portion of the charge of the court which was held to be error is as follows, to wit: "That the law implies malice in case of unlawful killing by means calculated to produce death; and in such case the burden of proof is on the defendant, if he

would reduce the offense to a lower grade than murder in the second degree.'' It was that portion of the instruction which told the jury that the burden of proof is on the defendant, etc., which the court held erroneous. The court says : '' That part of the charge which speaks of the burden of proof being on the defendant is not strictly correct. In the case of *Hull* v. *The State*, Galveston term, 1875, this subject was fully considered, and after a careful examination of the statutory provisions bearing upon it, and a review of the leading authorities, the conclusion is arrived at that the burden of proof is not on the defendant in a criminal case in the sense in which it is understood to rest on the defendant in a civil suit. In a criminal prosecution, when the accused relies on the plea of not guilty, admitting nothing, the *onus* is on the State to overcome the legal presumption of his innocence, and the question of his guilt is to be decided from the whole evidence, without pausing to inquire whether it was introduced by him or the State. Although the evidence should show an unlawful killing by means calculated to produce death, if the attendant circumstances leave it doubtful whether the killing was not manslaughter, then the rule as to the burden of proof does not apply, and the defendant cannot be convicted of murder.''

In the case at bar, all the circumstances attending the homicide were disclosed in the evidence, and there is no evidence tending to prove that the killing was manslaughter, or to excuse or justify the homicide. The authorities undoubtedly support the proposition that the law presumes malice from the mere fact of the homicide. 4 Bla. Com. 201. There are a number of authorities of the highest respectability, and many of them are cited in the brief of the counsel for the defendant, which hold that this presumption is not applicable when the facts and circumstances attending the homicide are disclosed in the evidence, so as to draw a conclusion of malice, or want of malice,

as one of fact from the evidence; that presumptions of this class are intended as substitutes in the absence of direct proofs, and are in their nature indirect and constructive; that the best evidence of the state of mind attending any act is what was said and done by the person whose motive is sought for.

There is much force in this line of authorities. In the present case, however, the instruction complained of does not, we think, authorize the jury to imply malice from the abstract fact of killing, or that, the homicide being proved, it is incumbent upon the prisoner to prove all the circumstances of mitigation, excuse, or justification. On the contrary, the court charges the jury that when the fact of killing has been clearly established, and it has not been shown to be the result of accident, or to have been done under such circumstances as will, in law, mitigate, excuse, or justify the act, the law, in such cases, implies malice without further proof, and makes such killing murder. The court, in effect, in this charge told the jury that they should look to all the facts and circumstances attending the homicide, as disclosed by the evidence; and if they disclosed no facts or circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the act, the law, in such cases, implies malice, and makes such killing murder. We are unable to discover any error in this instruction calculated to injure the rights of defendant.

The court also properly instructed the jury upon the law of negligent homicide, and upon drunkenness of the defendant in cases of homicide, as laid down by this court in the case of *Colbath* v. *The State*, 2 Texas Ct. App. 391. The same case has again been before this court during its present term, and the opinion of the court on the general doctrine of drunkenness as an excuse for crime in cases of homicide is fully expressed, and the question discussed at greater length. *Ante*, p. 76.

After a careful examination of the authorities, both English and American, we have held that voluntary intoxication is no excuse for crime; that it will not reduce an act which in a sober man would be murder to manslaughter. The mere fact of the accused being drunk will not mitigate the criminality of a voluntary killing, below the grade of murder. In all cases where the question is between murder in the first and murder in the second degree, the fact of drunkenness may be proved, to shed light upon the mental *status* of the offender, and thereby enable the jury to determine whether or not the killing resulted from a deliberate and premeditated purpose.

If the evidence had satisfied the jury that the defendant unlawfully shot at and killed Emma Dailey, and that he was very drunk when he did it, or so much so that if he had any purpose to take the life of the deceased, such purpose had its inception, and was carried into effect, when in such a state of mental confusion from drink as rendered him incapable of cool reflection, and of forming a design to take life, the killing, under such circumstances, would be murder of the second degree, and they should so say by their verdict.

The court charged on the doctrine of reasonable doubt as between the degrees of murder, and as applicable to negligent homicide; also, as to who did the killing. The court further charged the jury that " the.defendant is presumed to be innocent until his guilt is established by legal evidence to your satisfaction; and in case of reasonable doubt as to his guilt, he is entitled to be acquitted." This is in the language of article 3105, Paschal's Digest. We believe that the charge of the court, taken as a whole, presented a very fair, elaborate, and correct exposition of the law as applicable to the case.

It is urged — and for the first time in this court, so far as the record shows — that the witness Hamilton was an accom-

plice, and that the law requiring such testimony to be corroborated was not given to the jury. We do not believe that the evidence required such a charge. None was asked on this or any other point, and no exception was taken to the failure of the court to give such charge, or to the charge as given. We are clearly satisfied in our minds that the failure of the court to give such an instruction was not calculated to injure the rights of the accused. The evidence supports the verdict and judgment.

Believing that the defendant has had a fair and impartial trial, and been legally convicted, the judgment must be affirmed.

*Affirmed.*